**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**


**CIVIL ACTION NO. 11-CV-30153-NMG**


LEONARD ORCUTT,
Petitioner

v.

Gary Roden
Superintendent, Massachusetts Correctional Institution - Norfolk
Respondent

**LEAVE TO FILE GRANTED ON MARCH 2, 2012**


**ORCUTT'S REPLY MEMORANDUM IN SUPPORT OF**
**PETITION FOR A WRIT OF HABEAS CORPUS**


Nadell Hill
BBO No. 632976
P.O. Box 498
Adams, MA 01220
413-743-1569
nhill@socialaw.com


Date: March 9, 2012

## STATEMENT OF THE CASE

The Introduction, Procedural History, and Statement of the Relevant Facts are located on pages 1-2 of Orcutt's memorandum in support of his petition.

## ARGUMENT IN REPLY TO THE RESPONDENT

Orcutt stands by what he argued in his principal memorandum in support of his petition for a writ of habeas corpus. However, he adds the following in reply to the Respondent's memorandum. The Respondent wrote, "[d]uring the second day of trial, the Petitioner again cross-examined witnesses; and again made objections, responded to objections, and advocated for himself in bench conferences, with successes" [RM 4].[1] The Respondent went on to write, "[h]e addressed issues such as relevancy, lack of foundation, leading the witness, hearsay, and the best evidence rule" [RM 4]. Later, the Respondent used the above to support his argument that Orcutt had represented himself well [RM 39-40]. However, the Respondent did not cite the transcript pages to which he was referring. Perhaps the reason is that while Orcutt prevailed on some arguments he lost many others. For example, when Orcutt began questioning Lieutenant Leary on day two of the trial, the prosecutor's hearsay and relevance objections were sustained [Tr. II/9-10]. Shortly thereafter, another objection by the prosecutor was sustained [Tr. II/14]. Then when the prosecutor was questioning Detective Gambino, in eight transcript pages Orcutt lost on six objections and won on only one [Tr. II/47-54]. Later, in twelve

---

1. The trial transcript is in five volumes and is cited as [Tr. Vol/pg]. The Respondent's memorandum is cited as [RM pg].

transcript pages, Orcutt lost on six objections and won only on two [Tr. II/61-72]. Finally, Orcutt lost the argument about the best evidence rule [Tr. II/90-92]. Regardless, the issue presented in Orcutt's petition is not how well or poorly he performed as an attorney. Rather the issue is whether he had a right to reclaim his right to counsel under circumstances that would not cause a delay in the proceedings.

The Respondent argued, "had Petitioner's counsel resumed representation on the third day of trial, the trial on the whole would not have looked substantially different than the trial in <u>Wiggins</u>" [RM 27]. This seems to be an attempt by the Respondent to cast what Orcutt was seeking as hybrid representation. However, the critical distinction between <u>Wiggins</u> and the present case is that in <u>Wiggins</u>, the defendant and counsel worked as co-counsel. Indeed, in <u>Wiggins</u>, both the defendant and counsel made closing arguments. <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 182-183, 186 (1984). By contrast, in the present case, Orcutt was not asking for hybrid representation. Rather, he wanted stand-by counsel to take over full representation and on day three of the trial, stand-by counsel was ready to do so [Tr. II/119-120,III/6].

The Respondent argues that even though there was no request for a continuance on the third day of the trial there might have been a delay anyway. He supports his argument by citing <u>United States v. Leveto</u>, 540 F.3d 200 (3rd Cir. 1991), in which the Third Circuit held that it was proper for the trial judge to sua sponte consider the potential for delay even if there was no request for a continuance. See <u>Leveto</u> at 209. However, the

Respondent has taken the Third Circuit's reasoning out of the factual context that supported that reasoning. Significantly, the Third Circuit specifically pointed to the factual context of the case as the justification for upholding the trial court's ruling that a delay would be required even though none was requested. <u>Leveto</u> at 207. That factual context included that although the defendant argued that stand-by counsel would have been able to assume representation without delay, there was no such statement from stand-by counsel. <u>Leveto</u> at 209. By contrast, in the present case, on day three of the trial, stand-by counsel indicated that she was ready to take over full representation that morning [Tr. III/5-6]. In addition, in <u>Leveto</u>, the case was a complex tax case and the Third Circuit reasoned, "We need not dig deep into the record to understand the District Court's immediate assessment that a day of trial motion for counsel would have necessitated delay, and that such a delay was onerous." <u>Leveto</u> at 209. By contrast, in the present case, stand-by counsel stated that if she were to take over full representation that morning she expected the case to go to the jury that day [Tr. III/5].

The present case is closer to <u>United States v. Pollani</u>, 146 F.3d 269 (5th Cir. 1998), than to <u>Leveto</u>. In <u>Pollani</u>, the defendant waived his right to counsel and elected to proceed to trial pro se. <u>Pollani</u> at 270. Then, four days before the start of the trial, the defendant appeared with a lawyer who moved to take over representation and moved for a continuance so he could prepare. <u>Pollani</u> at 271. The trial judge denied both motions. <u>Id</u>. The defendant then requested that the lawyer be allowed to represent him even without a

continuance.  Id.  The trial judge denied the request and ruled that the lawyer could only serve as stand-by counsel.  Id.  The Fifth Circuit upheld the denial of a continuance but held that it was error not to allow the defendant to reclaim his right to counsel once the defendant indicated he wanted to reclaim that right even if there would be no continuance.  Pollani at 273.  Similarly, in the present case, it was within the trial judge's discretion not to allow Orcutt to reclaim his right to counsel on day two of the trial because at that point stand-by counsel said she needed a continuance until the next morning to prepare [Tr. II/120].  However, given stand-by counsel's representation the morning of the third day of the trial that if she were to take over full representation at that point she expected the case to go to the jury that day, just as in Pollani, the judge had no sufficient basis for not allowing Orcutt to reclaim his right to counsel.

The Respondent argues that there are factors other than a delay in the proceedings that have been recognized as a justification for not allowing a pro se defendant to reclaim his right to counsel [RM 33].  However, the factors cited by the Respondent do not apply to the present case.  For example, the Respondent argues a defendant can be prevented from reclaiming his right to counsel to avoid "disruption of the case generally", "case management issues", and "the practical concerns of managing its docket" [RM 34].  The Respondent also argues that "the timing of the request" is a factor upon which courts have placed emphasis when deciding whether a defendant can reclaim his right to counsel [RM 34].  Respectfully, these are just different ways of arguing against allowing a defendant to

reclaim his right to counsel if doing so would cause a delay in the proceedings. This can be seen by the cases the Respondent cites to support this argument. In <u>United States v. Tolliver</u>, 937 F.2d 1183 (7th Cir. 1991), the pro se defendant wanted the trial adjourned for several days so that counsel could be obtained. <u>Tolliver</u> at 1187. In <u>United States v. Leveto</u> (supra), allowing the pro se defendant's motion for counsel would have required a continuance. <u>Leveto</u> at 209. In <u>United States v. Merchant</u>, 992 F.2d 1091 (10th Cir. 1993), when the defendant indicated that he wanted stand-by counsel to take over representation, counsel indicated that she would need a continuance to prepare. <u>Merchant</u> at 1093.

   The Respondent argues that a defendant properly could be prevented from reclaiming his right to counsel because if a defendant were allowed to reclaim his right to counsel there is a risk that counsel would pursue a strategy or theory of the case that was different from that which had been pursued by the pro se defendant [RM 35]. Well, the simple response is that if a defendant wants stand-by counsel to take over full representation, as occurred in the present case, then he cannot complain about how counsel presents the case. The Respondent argues that if counsel were to pursue a different strategy it would create a problem for the prosecutor [RM 35]. However, regardless of what line of questioning was pursued by counsel during cross examination of the Commonwealth's witnesses, the prosecutor would have full right of redirect examination. In addition, regardless of what line of questioning was pursued by counsel during direct examination

of defense witnesses, the prosecutor would have full right of cross examination.

The Respondent argues that a defendant can be prevented from reclaiming his right to counsel if his request to do so "is likely motivated by manipulative purposes" [RM 37]. The Respondent argues that Orcutt's pattern of hiring and firing many attorneys suggested manipulative intent [RM 38]. To support this argument the Respondent points to a statement by the prosecutor that there had been at least five defense counsel [RM 38]. However, the docket sheets dispute the prosecutor's statement. According to the docket sheet for PLCR2000-00071, counsel was assigned on January 24, 2001 [see Respondent's Exhibit A page 5]. Then on December 17, 2001, Attorney Elias withdrew [Exhibit A page 5]. Then on March 29, 2002, Attorney Krowski took over representation [Exhibit A page 6]. Then on April 26, 2006, counsel withdrew [Exhibit A page 8]. Then on May 11, 2006, Attorney Zwicker-Young, who became stand-by counsel at trial, took over representation [Exhibit A page 9]. The only other defense attorney involved in the case prior to trial was Attorney Carlucci [Exhibit B page 3]. He represented Orcutt on NOCR2004-00427 before the case was transferred from Norfolk County to Plymouth County and would not have been involved in the case once it was transferred [see Exhibit B page 4]. So the "pattern of hiring and firing" involved three attorneys over the time period of January 24, 2001, through November 30, 2006. Moreover, Orcutt was not seeking new counsel but rather was seeking to have stand-by counsel take over full representation right away.

## CONCLUSION

Orcutt was improperly prohibited from reclaiming his right to counsel and therefore this Court should grant his petition for a writ of habeas corpus.

                Respectfully Submitted,

                Leonard Orcutt,

                by his attorney,

                /s/ Nadell Hill
                Nadell Hill
                P.O. Box 498
                Adams, MA 01220
                413-743-1569
                BBO No. 632976
                nhill@socialaw.com

Dated: March 9, 2012

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1(D), Orcutt respectfully requests that this Honorable Court order oral argument in the above entitled matter because oral argument would assist the Court.

## CERTIFICATE OF SERVICE

I, Nadell Hill, certify that this document, filed through the Electronic Case Filing system, will be electronically sent to Assistant Attorney General Randall Ravitz, Respondent's counsel on the date set forth below:

Dated: March 9, 2012

                /s/ Nadell Hill
                Nadell Hill