UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEONARD ORCUTT,
        Petitioner,


        v.                                CIVIL ACTION NO.
                                          11-30153-NMG

GARY RODEN,
        Respondent.

**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS
(DOCKET ENTRY # 10)**

**July 25, 2012**

**BOWLER, U.S.M.J.**

On June 3, 2011, petitioner Leonard Orcutt ("petitioner"),
an inmate at the Massachusetts Correctional Institute in Norfolk,
Massachusetts ("MCI-Norfolk"), filed a petition for a writ of
habeas corpus under 28 U.S.C. § 2254 ("section 2245").  The
petition sets out a single ground for relief, to wit, a denial of
petitioner's Sixth Amendment right to counsel.

Respondent Gary Roden ("respondent"), Superintendent of MCI-
Norfolk, moves for judgment on the pleadings.  (Docket Entry #
10).  Respondent argues that the decision of the Massachusetts
Appeals Court ("appeals court") is not contrary to or an
unreasonable application of clearly established federal law as
determined by the Supreme Court under the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §
2254(d).

Petitioner did not request an evidentiary hearing. Even if he had, an evidentiary hearing is neither necessary nor required. The relevant facts, which concern petitioner's attempts to reclaim his right to counsel during the state court trial, are fully contained in the state court record.

BACKGROUND

On December 29, 2000, a grand jury sitting in the Massachusetts Superior Court (Plymouth County) ("the trial court") returned indictments charging petitioner with two counts of armed robbery while masked or disguised, two counts of unarmed robbery, two counts of assault with a dangerous weapon and four counts of being a habitual criminal. (Docket Entry # 7, Ex. H, App. 2, 3, & 15-18). Represented by court appointed counsel, petitioner pled not guilty at his January 24, 2001 arraignment. (Docket Entry # 7, Ex. H, App. 2). The trial court allowed appointed counsel's motion to withdraw and in March 2002, retained counsel filed an appearance on petitioner's behalf. (Docket Entry # 7, Ex. H, App. 3).

On September 2, 2004, a grand jury sitting in the Massachusetts Superior Court (Norfolk County) indicted petitioner on one count of unarmed robbery and one count of larceny over $250. (Docket Entry # 7, Ex. B). Petitioner pled not guilty to these charges at his December 1, 2004 arraignment. On or about July 27, 2005, the Massachusetts Superior Court (Norfolk County)

allowed the Commonwealth's motion to transfer the two indictments to the trial court in Plymouth County as well as petitioner's motion to join related offenses for trial. (Docket Entry # 7, Ex. B; Ex. H, App. 11).

In June 2006, a different retained counsel took over the case on petitioner's behalf due to a disagreement between petitioner's prior retained counsel regarding how to proceed at trial. (Docket Entry # 7, Ex. L, p. 39). Trial commenced on November 27, 2006, in the trial court. (Docket Entry # 7, Ex. L, p. 1). On the first day of the trial and after handling various motions in limine, retained counsel informed the trial judge that she did not have a meeting of the minds with petitioner in terms of how to proceed at trial. (Docket Entry # 7, Ex. L, pp. 6-32 & 39). Retained counsel stated that as a result, petitioner wished to proceed pro se. (Docket Entry # 7, Ex. L, p. 40).

When queried by the trial judge, retained counsel agreed to act as standby counsel. (Docket Entry # 7, Ex. L, p. 40). Retained counsel also clarified that she would continue to represent petitioner until after the jury selection, at which point petitioner would handle the opening statement as well as everything else going forward. (Docket Entry # 7, Ex. L, p. 40). Retained counsel further acknowledged that she had gone over the ground rules with petitioner. (Docket Entry # 7, Ex. L, p. 40). Thereafter, the trial judge allowed petitioner more time to decide whether to proceed pro se or not, as there were some pros

and cons that petitioner needed to weigh before making his final decision.  (Docket Entry # 7, Ex. L, p. 42).

Retained counsel proceeded to handle the jury selection process.  (Docket Entry # 7, Ex. L, p. 42-130).  She then informed the trial judge at a bench conference that petitioner remained adamant about his decision to proceed pro se.  (Docket Entry # 7, Ex. L, p. 143).  In response, the trial judge allowed retained counsel to assist petitioner as standby counsel with the caveat that the trial judge would not allow intermittent representation.  (Docket Entry # 7, Ex. L, pp. 144).

The trial judge conducted a thorough colloquy with petitioner during which time petitioner acknowledged that if he were to proceed pro se, he would "be responsible for all matters that relate to [his] representation"; "all of the examination of witnesses, any voir dire that takes place, closing argument, opening statement . . ."; and he "would need to call and examine [his] own witnesses and [he] would have to cross examine the Commonwealth's witnesses."  (Docket Entry # 7, Ex. L, pp. 151-54).  The trial judge further advised petitioner that he was appointing petitioner's existing counsel as standby counsel thereby alerting him to the fact that retained counsel would remain with him for the duration of the trial and he could consult with her and seek her advice when necessary.  (Docket Entry # 7, Ex. L, pp. 151-52, 156-59).

The trial judge found inter alia that petitioner "understood the risks that may accrue to him in going forward without having counsel represent him." (Docket Entry # 7, Ex. L, p. 158). Petitioner executed a waiver of counsel form and the trial judge permitted him to proceed pro se with standby counsel. (Docket Entry # 7, Ex. L, p. 158). Petitioner delivered an opening statement, cross examined witnesses, lodged objections, responded to objections from the prosecution and advocated for himself at bench conferences. (Docket Entry # 7, Ex. L, pp. 172-286).

On the second day of the trial, petitioner again adequately and sufficiently cross examined witnesses, made objections, responded to objections and advocated for himself during bench conferences. (Docket Entry # 7, Ex. M). At one point, the trial judge stated:

> The Court notes for the record that the defendant has been able to ask questions of each of the witnesses. He's appeared to be attentive throughout the trial. He's made timely objections. A number of his objections have been sustained throughout the course of the trial.

(Docket Entry # 7, Ex. M, p. 142). At another point, the trial judge stated that standby counsel had been present through the trial and acted appropriately in her role, lending her assistance when petitioner requested it. (Docket Entry # 7, Ex. M, p. 120).

There was a period of time, however, during the late morning of the second day of trial when petitioner made complaints of fatigue. (Docket Entry # 7, Ex. M, p. 119). Petitioner expressed that "bringing [out facts and evidence] in a court of

law isn't the same as [he] thought it would be in [his] cell" and that he had gotten little sleep and could not even hold a thought. (Docket Entry # 7, Ex. M, pp. 119-20). Petitioner inquired as to whether standby counsel could resume representation the following day, to which the trial judge replied:

> When the idea was initially brooded [sic] by your lawyer or suggested that that was what your wish was, I had advised you to think it over and I did not immediately do a colloquy to give you a chance to think it over so that you would be aware of some of the limitations, risks and pitfalls that might be present. That's the reason, sir, we conducted the full colloquy.
>
> The Court has to look at this point at all of the issues that exist here, issues that involve your right to a fair trial and the Court has tried scrupulously to protect that and has [acceded] to your wish that you be able to proceed on your own. It is extremely problematic at this point to have a reversal of course and it is unfair both to the Court, to the jurors and certainly arguably to counsel to have counsel jump at this point and attempt to resume when part of the trial has been done after a full waiver and a full explanation of rights to the defendant. So I think at this point, sir, you're going to need to carry on your own.

(Docket Entry # 7, Ex. M, pp. 120-21).

Thereafter, petitioner continued to cross examine a witness before stating again that he was fatigued. (Docket Entry # 7, Ex. M, pp. 140-41). In particular, at a late morning bench conference, petitioner described his mind as "just mush right now" and that he had "been up since 2:00 a.m." (Docket Entry # 7, Ex. M, p. 140). At this point, the trial judge declared a recess that lasted "the better part of a half an hour" to allow petitioner a chance to consult with standby counsel. (Docket

Entry # 7, Ex. M, p. 141). After the recess, petitioner inquired for a second time if standby counsel would be able to take over, which the trial judge denied. (Docket Entry # 7, Ex. M, p. 142). Petitioner continued to question the witness. (Docket Entry # 7, Ex. M, p. 142). After asking the witness nine questions, petitioner again expressed his fatigue at which point the trial judge directed counsel to approach the side bar. (Docket Entry # 7, Ex. M, p. 144).

At the side bar, petitioner repeated that, "I can't think. I have no ability to form thoughts right now – to form questions. I can't even think right now. I've been up since 2 o'clock in the morning." (Docket Entry # 7, Ex. M, p. 144). After further discussion, the trial judge recessed the trial for an early lunch break of noon. (Docket Entry # 7, Ex. M, p. 147). Outside the presence of the jury, the trial judge explained that:

> The purpose of the recess is to give full opportunity to [petitioner] to be able to consult with [standby counsel], as to possible questions of this witness. It is then, when we resume, going to be up to [petitioner] whether he does or not does wish to ask [the witness] any further questions.
>
> So the record is clear, the defendant in electing to proceed pro se is held to the same rules as would an attorney. He needs to handle the case and conduct the case on his own behalf. We are affording him standby counsel of a skilled and experienced lawyer so he can have full opportunity to consult with her. However, his decision to represent himself was his own decision and under all the governing case law, the court honors the defendant's volitional request that he represent himself.

(Docket Entry # 7, Ex. M, pp. 147-48).

When trial resumed after the lunch break, petitioner

informed the trial judge that he had "a little bit of a second wind." (Docket Entry # 7, Ex. M, p. 150). He also accepted the trial judge's offer to continue questioning the witness from a seated position. (Docket Entry # 7, Ex. M, p. 150). Petitioner proceeded to question the witness without any further complaints of fatigue. (Docket Entry # 7, Ex. M, p. 150-245). At multiple points, the trial judge raised concerns about how long petitioner spent questioning the witness and repeatedly encouraged petitioner to wrap up the questioning. (Docket Entry # 7, Ex. M, pp. 197, 204, 224, 236, & 238).

At the outset of the third day of trial, standby counsel offered to resume representation in place of petitioner. (Docket Entry # 7, Ex. N, pp. 5-12). Having spoken with petitioner, standby counsel represented that there was "a slight probability" they would call two other witnesses and that otherwise her representation would entail finishing the cross examination of the current witness and doing the closing argument. (Docket Entry # 7, Ex. N, pp. 5-6). Standby counsel also posited that her involvement had not been lost upon the jury and that she did not anticipate "it would be a huge switch for [the jury] to see" her representing petitioner. (Docket Entry # 7, Ex. N, p. 6). The trial judge responded by stating:

> There is absolutely . . . a right to represent yourself, and if the court had denied [petitioner] his request to act as his own counsel, the court I think could have been called into question as to whether it had committed error. So the court instead conducted the colloquy, listened carefully to [petitioner], did not immediately proceed when

> his counsel indicated he might wish at some point to do that
> but instead urged [petitioner] to think it over before he
> took that significant, significant step. [Petitioner] had
> significant time, thought it over and informed the court
> that it was his unequivocal decision that he wished to
> proceed with a self-representation.
>
> Based upon that and upon the court's observation of
> what's occurred, the court is not going to allow counsel in
> effect to have a resumption situation at this point. The
> defendant has made the election and he needs to proceed pro
> se.

(Docket Entry # 7, Ex. N, pp. 8-9). Thereafter, petitioner
completed cross examination and recross of the witness on the
stand and cross examination of the final two witnesses called by
the Commonwealth. (Docket Entry # 7, Ex. N).

On the fourth day of trial, petitioner delivered a closing
argument and moved for a required finding of not guilty. (Docket
Entry # 7, Ex. O). Petitioner was found guilty of three counts
of unarmed robbery and the charge of larceny over $250 was
dismissed. (Docket Entry # 7, Ex. O, pp. 105-09). The next day,
petitioner was found guilty of the habitual offender charges
following a bench trial before the trial judge. (Docket Entry #
7, Ex. P, p. 55). Standby counsel represented petitioner as
counsel at this proceeding. (Docket Entry # 7, Ex. P, pp. 5, 7-9
& 55). On December 1, 2006, the trial judge sentenced petitioner
to concurrent life terms in state prison. (Docket Entry # 7, Ex.
P, p. 62). On December 29, 2006, petitioner filed a notice of
appeal. (Docket Entry # 7, Ex. H, App. 13).

On February 2, 2007, the trial court allowed a motion by the
Commonwealth to amend two charges of armed robbery to unarmed

robbery.  Petitioner pled guilty to the two counts of unarmed
robbery as amended and two counts of assault with a dangerous
weapon, waiving petitioner's right to appeal for those offenses.
(Docket Entry # 7, Ex. H, App. 8).  That same day, the trial
court ordered the guilty pleas placed on file with petitioner's
consent and allowed a motion by the Commonwealth to dismiss the
remaining habitual offender charges.  (Docket Entry # 7, Ex. H,
App. 8).

On appeal and represented by court appointed counsel,
petitioner raised the denial of his right to counsel claim.
(Docket Entry # 7, Ex. H).  The argument focused on the trial
court's rejection of petitioner's standby counsel's offer to
resume representation on the third day of trial.  (Docket Entry #
7, Ex. H).  Petitioner argued that having standby counsel take
over on the third day of trial would not have caused a delay
because she was ready and willing to resume representation.
(Docket Entry # 7, Ex. H, p. 17).  Petitioner stated that this
incident denied him his right to counsel in violation of the
Sixth and Fourteenth Amendments to the United States Constitution
and article XII of the Massachusetts Declaration of Rights.
(Docket Entry # 7, Ex. H, p. 11).

On July 17, 2009, the appeals court affirmed the judgments.
(Docket Entry # 7, Ex. F).  The appeals court pointed out that:

> Prior to the empanelment, the judge . . . told defense
> counsel that:  [petitioner] needed to be aware of the  "pros
> and cons" before deciding whether to have counsel
> represent him at trial, he would not "bind" [petitioner]

> before the jury selection, and [petitioner] could discuss
> his choice further with defense counsel . . .
>
> The judge permissibly could have allowed standby counsel to
> assume representation of [petitioner] at this junction;
> however, the judge was not required to permit standby
> counsel to do so.  See Commonwealth v. Molino, 580
> N.E.2d 383, 385-86 (1991).

(Docket Entry # 7, Ex. F).[1]  Noting that the decision of

Commonwealth v. Kenney, 769 N.E.2d 1231, 1239 (2002), controlled

the issue, the appeals court stated that, "In any event, for all

that appears, the judge within his discretion properly could deny

any such request by standby counsel or [petitioner], whether made

on the third day or earlier in trial, as it might have required a

continuance."  (Docket Entry # 7, Ex. F).

On July 23, 2009, petitioner filed a petition for rehearing

in the appeals court.  (Docket Entry # 7, Ex. D).  Eight days

later, petitioner filed an application for further appellate

review ("ALOFAR") with the SJC.  (Docket Entry # 7, Ex. E).  On

March 23, 2010, the appeals court denied the petition for

rehearing.  (Docket Entry # 7, Ex. D).  On June 18, 2010, the SJC

denied the ALOFAR.  (Docket Entry # 7, Ex. E).

Petitioner filed this petition on June 3, 2011.  (Docket

Entry # 1).  As previously indicated, petitioner asserts a denial

---

[1] "[A] determination of a factual issue made by a State
court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).
The statutory presumption of correctness extends to "findings
[that] are made by a state appellate court as well as [those
that] are made by a state trial court."  Rashad v. Walsh, 300
F.3d 27, 35 (1st Cir. 2002); Sanna v. Dipaolo, 265 F.3d 1, 7 (1st
Cir. 2001) (explaining that the standard applies only to the
determination of "basic, primary, or historical facts").

of his Sixth Amendment right to counsel with respect to his inability to have standby counsel reengaged on the third day of trial. (Docket Entry # 1). In support of this claim, petitioner alleges that his right to counsel was violated when his request to reclaim his right to counsel was not allowed even though standby counsel was ready and willing to take over representation. (Docket Entry # 3). Petitioner explains that, "the fact that [he] was prohibited from reclaiming his right to counsel even though he was not seeking hybrid representation[2] and even though reclaiming his right to counsel would not have caused any delay in the proceedings is the basis of his claim for relief." (Docket Entry # 3).

## DISCUSSION

### I.  Standard of Review

Under section 2254(d)(1) there are "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set

---

[2]  "Hybrid representation" in the manner petitioner uses the term refers to the type of hybrid representation described in McKaskle v. Wiggins, 465 U.S. 168 (1984), as a situation where both the defendant and standby counsel are appearing before the court and representing the defendant as co-counsel. Id. at 170.

of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" <u>Gomes v. Brady</u>, 564 F.3d 532, 537 (1st Cir. 2009); <u>accord</u> <u>Ramdass v. Angelone</u>, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of Supreme Court or "reaches a different result from" Supreme Court case "despite confronting indistinguishable facts"); <u>Williams v. Taylor</u>, 529 U.S. at 405-6 (contrary decision occurs where state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent"). "'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 65 (1st Cir. 2009).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Williams v. Taylor</u>, 529 U.S. at 404-05 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the

governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'" <u>Gomes v. Brady,</u> 564 F.3d at 537; <u>see</u> <u>Foxworth v. St. Amand</u>, 570 F.3d 414, 425 (1st Cir. 2009). "'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" <u>Yeboah-Sefah v.</u> <u>Ficco</u>, 556 F.3d at 65. The inquiry is an objective one, <u>see</u> <u>McCambridge v. Hall</u>, 303 F.3d 24, 36 (1st Cir. 2002), insofar as the decision "must have been 'objectively unreasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Wiggins v. Smith</u>, 539 U.S. at 520-21 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Schriro v. Landrigan</u>,

550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-—a substantially higher threshold").  When "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'"  <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190 (2009); <u>accord</u> <u>Foxworth v. St. Amand</u>, 570 F.3d at 425 ("state court's decision is not vulnerable unless it evinces some incorrectness beyond mere error").  Section 2254(d) also "applies even where there has been a summary denial" such as where the state court denies a motion based on a "substantive ground that it is without merit."  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1402 (2011) (state court denied each state petition "'on the substantive ground that it is without merit'").

With these principles in mind, this court turns to petitioner's ground for habeas relief.

II.  <u>Ground One</u>

Petitioner claims that his Sixth Amendment right to counsel was violated on the third day of the trial when the trial court declined standby counsel's offer to resume representing petitioner.  (Docket Entry # 1).  Respondent correctly maintains that the appeals court's decision was on the merits and therefore section 2254(d)(1) review applies.  Although the appeals court cited a state court case, <u>Commonwealth v. Molina</u>, 580 N.E.2d 383,

385-86 (Mass. 1991), when it addressed the claim, petitioner presented the issue to the appeals court as a violation of the United States Constitution as well as the state constitution. (Docket Entry # 7, Ex. I, p. 24).  Merits review under section 2254(d)(1) therefore applies.  See Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011) (when "federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits" absent "any indication or state-law procedural principles to the contrary").  Moreover, if there is any doubt, the appeals court's reliance on Molina, which in turn cites and discusses the relevant Supreme Court cases concerning the issue,[3] dispels any suggestion that the decision did not address the merits of the federal constitutional claim.

Turning to the section 2254(d)(1) analysis, petitioner correctly observes that "there is no Supreme Court holding on the question of whether a defendant can reclaim his right to counsel once he has waived it if reclaiming that right would not cause any delay in the proceedings."  (Docket Entry # 3, p. 7). Rather, the Supreme Court in Gideon set out the clearly established rule that the Sixth Amendment to the United States Constitution guarantees every defendant the right to counsel.

---

[3]  Gideon v. Wainwright, 372 U.S. 335 (1963) (guaranteeing the right of counsel); Faretta v. California, 442 U.S. 806 (1975) (guaranteeing the defendant the right to represent himself); and McKaskle v. Wiggins, 465 U.S. 168 (1984) (noting the absence of a constitutional right to hybrid representation).

<u>Gideon v. Wainwright</u>, 372 U.S. 335, 349 (1963). The Supreme Court in <u>Faretta</u> set out the converse constitutional right that a defendant has a Sixth Amendment right to represent himself. <u>Faretta v. California</u>, 442 U.S. 806, 821 (1975). Finally, the Supreme Court in <u>Wiggins</u> held that, "A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 184 (1984).

In light of the foregoing, there is no clearly established Supreme Court precedent that affords the defendant an absolute or clearly established constitutional right to reclaim his right to counsel after a waiver. In other words, the applicable clearly established federal law as determined by the Supreme Court operates at a relatively high level of generality. The appeals court therefore has greater leeway to render a decision that is not objectively unreasonable. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004). As explained in <u>Yarborough</u>, "the range of reasonable judgment can depend in part on the nature of the relevant rule" and "[t]he more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." <u>Id.</u>

It is also true that, "Decisions from the lower federal courts may help inform the AEDPA analysis to the extent that they state the clearly established federal law determined by the Supreme Court." <u>Aspen v. Bissonnette</u>, 480 F.3d 571, 574 n.1 (1st

Cir. 2007) (citing <u>Ouber v. Guarino</u>, 293 F.3d 19, 27 (1st Cir. 2002)). Here, petitioner and respondent take different views of circuit court decisions by setting out different rules of clearly established federal law as determined by the Supreme Court.

Petitioner contends that because the appeals court did not find that his request to reclaim his right to counsel was untimely because the trial was well in progress, it was unreasonable to prohibit petitioner from reclaiming his right to counsel. (Docket Entry # 3). Petitioner's reasoning is incorrect. Respondent points out correctly that the Sixth Amendment right to counsel is not absolute after a waiver. <u>See United States v. Leveto</u>, 540 F.3d 200, 207 (3rd Cir. 2008) (there is a "wide agreement that, once waived, the Sixth Amendment right to counsel is no longer absolute") (collecting Fourth, Seventh, Ninth and Tenth Circuit cases). The Fourth Circuit in <u>Gallop</u> found that in determining the sufficiency of a waiver, the court "should be entitled to take into account . . . the defendant's insistence that he not be represented by a particular counsel." <u>United States v. Gallop</u>, 838 F.2d 105, 110 (4th Cir. 1988).

Petitioner is also incorrect in stating that the potential for delay is the only justification courts recognize to deny a request to engage standby counsel. (Docket Entry # 3). The First, Third, Fourth and Seventh Circuits have noted the propriety of considering other matters, such as the potential for disruption of the case, the existence of good cause and practical

case management issues.  See United States v. Leveto, 540 F.3d at

207 (trial court "can and should consider the practical concerns

of managing its docket and the impact that a request may have on

its general responsibilities for the prudent administration of

justice"); United States v. West, 877 F.2d 281, 286 (4th Cir.

1989) (trial court "is entitled to take into account the

countervailing public interest in proceeding on schedule" and

that "[t]his countervailing interest has no less weight merely

because the motion is filed by a pro se defendant"); United

States v. Solina, 733 F.2d 1208, 1211-12 (7th Cir. 1984)

("criminal defendant has a constitutional right to defend himself

. . . [and if] at the last minute he gets cold feet and wants a

lawyer to defend him he runs the risk that the judge will hold

him to his original decision in order to avoid the disruption of

the court's schedule"); see also United States v. Proctor, 166

F.3d 396, 402 (1st Cir. 1999) (trial judge can deny a defendant

representation by counsel "only when circumstances unequivocally

demonstrate a waiver, either when a defendant knowingly,

voluntarily, and clearly asserts the mutually exclusive right to

self-representation, or through delay or other conduct

inconsistent with its continuation").

The Third and Seventh circuit court decisions recognize the

interplay between the timing of a motion to reengage counsel

after a waiver and its impact on the proceeding and the court's

docket.  See United States v. Leveto, 540 F.3d at 210 ("the last-

minute timing of a motion is generally a proper factor in
considering whether to grant the motion, particularly where, as
is the case here, the timing of the motion is part and parcel
with the consideration of whether disruption would result if the
motion was granted"); United States v. Tolliver, 937 F.2d 1183,
1187 (7th Cir. 1991) ("it is well within the discretion of the
court to deny as untimely requests for counsel made after
meaningful trial proceedings have begun"); see also United States
v. Proctor, 166 F.3d at 403 n. 8 ("last-minute timing and a
warning" could constitute "aggravating circumstances" that would
permit a trial court to properly deny a defendant's request to
reengage counsel after electing to proceed pro se).

Petitioner nevertheless maintains that the test for
determining whether a defendant can reclaim his right to counsel
is "whether doing so would cause any delay in the proceedings or
whether the trial is already well underway." (Docket Entry # 3,
p. 9). To support this argument, petitioner quotes Proctor,
where the court noted "it is within the [trial] court's
discretion to refuse a defendant's request to withdraw from self-
representation after a valid waiver if a defendant seeks counsel
in an apparent effort to delay or disrupt proceedings on the eve
of trial, or once trial is well underway." United States v.
Proctor, 166 F.3d at 402. Petitioner further points out that
this principle is echoed by decisions in the following Seventh,
Tenth and Eleventh circuit court decisions: United States v.

<u>Tolliver</u>, 937 F.2d at 1187; <u>United States v. Merchant</u>, 992 F.2d 1091, 1095 (10th Cir. 1993); <u>Horton v. Dugger</u>, 895 F.2d 714, 716 (11th Cir. 1990).  Petitioner adds that in <u>Tolliver</u>, the court found that, "It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun."  <u>United States v. Tolliver</u>, 937 F.2d at 1187.  Petitioner, therefore, contends that because the appeals court did not find that his request to reclaim his right to counsel as untimely because the trial was well in progress, it was unreasonable to prohibit petitioner from reclaiming his right to counsel.  (Docket Entry # 3, p. 10).

Here, the appeals court did not make an unreasonable application of clearly established federal law as determined by the Supreme Court.  As previously explained, clearly established federal law takes into account factors other than untimeliness and including disruption to the proceeding and the court's docket.  <u>See</u> <u>generally</u> <u>United States v. Leveto</u>, 540 F.3d at 209.<sup>4</sup> The trial judge in petitioner's case was concerned with the pace of the trial and believed that a change of representation would cause further delay.  (Docket Entry # 7, Ex. M, pp. 197, 204-5,

_____

<sup>4</sup>  The court in <u>Leveto</u> explained:

[The court] cannot . . . hamstring the discretion of the district court by limiting its consideration of delay to only those instances where a continuance is expressly requested . . . As a matter of law, a district court does not err by considering <u>sua</u> <u>sponte</u> the potential delay or disruption that would result form a change of counsel.

<u>United States v. Leveto</u>, 540 F.3d at 209.

224, 236, 246-47). Problems created by delays, such as
reinstating one's standby counsel, create significant burdens and
difficulties for prosecutors, jurors, witnesses and court
personnel as well as disrupt scheduling in the court's other
cases. Id. at 207-10; United States v. Solina, 733 F.2d at 1211-
12. The trial judge's concerns were particularly reasonable,
given that petitioner's request for standby counsel to take over
was on the third day of trial, unexpected and the defense was
already in the midst of cross examining a witness. (Docket Entry
# 7, Ex. N, pp. 5-9).

Moreover, the potential for delay may not have been the only
concern the trial judge was using as a proper justification to
deny petitioner's request to reengage standby counsel. A change
of representation on the third day of trial could have brought a
change in the defense's theory and strategy, disrupted the
prosecution's presentation of its case and created confusion
among the jurors and other participants. Such a concern is well
taken where, as here, standby counsel previously stated that she
and petitioner did not have a "meeting of the minds in terms of
what the theory should be for advancement at the time of trial."
(Docket Entry # 7, Ex. L, p. 39). Further, there was a voluntary
and knowing waiver by petitioner after an extensive colloquy.
(Docket Entry # 7, Ex. L, pp. 151-54 & 158).

In short, the appeals court's decision was not an
unreasonable application of clearly established law as determined

by the Supreme Court.  To the contrary, it was an entirely reasonable application of such law.  Ground one fails to provide a basis for habeas relief.


CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[5] that respondent's motion for judgment on the pleadings (Docket Entry # 10) be **ALLOWED** and that the petition (Docket Entry # 1) be **DISMISSED.**


          ___/s/ Marianne B. Bowler___
          **MARIANNE B. BOWLER**
          United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objections.  <u>See</u> Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.